UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPOUND SOLUTIONS, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>COREFX INGREDIENTS, LLC, a Delaware Limited Liability Company; DOES 1-10,<br><br>    Defendant. | Case No.:  19cv2058-JAH (WVG)<br><br>**ORDER GRANTING MOTION TO TRANSFER AND DENYING AS MOOT MOTION TO DISMISS [Doc. Nos. 10, 12]** |

## INTRODUCTION

Pending before the Court are Defendant CoreFX Ingredients, LLC's ("CoreFx") motions to transfer venue and motion to dismiss. *See* Doc. Nos. 10, 12. Having carefully considered the parties' papers, relevant legal authority, the record in this case, and for the reasons set forth below, the Court hereby **GRANTS** the motion to transfer and **DENIES AS MOOT** CoreFx's motion to dismiss.

## BACKGROUND

Plaintiff, Compound Solutions, Inc. ("CSI" or "Plaintiff"), is an ingredient company that sources and sells ingredients for use in dietary supplements and foods. Doc. No. 15-1 (Declaration of Matthew Titlow) at 2. CoreFX is a manufacturer specializing in the

production of dry dairy and lipid ingredients. Doc. No. 10 at 7. In 2017, CSI began ordering products from CoreFX. Doc. No. 15 at 8. Between 2018 and 2019, CSI entered into a series of contracts with CoreFX for the continued purchase of ingredient products. *Id.* CSI and CoreFX followed the following course of dealings: (1) CSI would contact CoreFX regarding ingredients needed for CSI's resale; (2) CoreFX would provide a specification sheet to CSI regarding the needed ingredients; (3) the parties would discuss the ingredients, pricing, and shipping details; (4) CSI would submit a purchase order to CoreFX; (5) CoreFX would accept CSI's offer; (6) CoreFX would send a Certificate(s) of Analysis ("COA") along with a Sales Order ("Sales Orders"); (7) CoreFX would send CSI a release of the shipment with anticipated shipping/delivery dates and would ship the ingredients to CSI; (8) CoreFX would issue and invoice; and (9) CSI would issue payment. Doc. No. 15 at 9.

The Sales Orders agreed upon between the parties contained a separate document thereto CoreFX's Terms and Conditions, ("Terms and Conditions") to which the parties agreed to be bound. Doc. Nos. 10 at 2; 1-2 (Exh. H) at 18. The Terms and Conditions listed several provisions governing any dispute or claim(s) arising from or relating to an alleged breach of the parties' agreements. Doc. No. 10 at 8. Although the Terms and Conditions were provided by CoreFX to CSI upon each transaction, CSI was free to object to any of the Terms and Conditions in writing. *Id.* Pursuant to the Terms and Conditions, the parties agreed to a provision entitled "Applicable Law; Consent to Jurisdiction and Venue" (the "Forum Selection Clause"). Specifically, the provision provides:

> Buyer [CSI] hereby consents to the exclusive jurisdiction in the state and federal courts in the State of Illinois and to venue where Seller's [CoreFX] offices are located with respect to all disputes concerning the subject matter of this Order Acknowledgment.

Doc. No. 1-2 (Ex. H) at 18. By accepting the Sales Orders, CSI agreed to comply and be bound by the Terms and Conditions, including the Forum Selection Clause.

On October 25, 2019, CSI filed the instant action against CoreFX in the United States District Court for the Southern District of California. Doc. No. 1. CSI alleges to have received nonconforming goods from CoreFX in four transactions. *Id.* CSI asserts the following claims against CoreFX: violation of California's Unfair Competition Law ("UCL"); violation of the False Advertising Law ("FAL"); common law negligence; common law fraud; breach of contract; breach of express warranty; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; and declaratory relief that the disclaimer and the Terms & Conditions are Unconscionable and Unenforceable. *Id.* at 9-18. On December 2, 2019, CoreFx filed a motion to change venue to the Northern District of Illinois, pursuant to Title 28 of the United States Code, section 1404(a). *See* Doc. No. 10. On December 5, 2019, CoreFx filed a motion to dismiss CSI's complaint for failure to state a claim. *See* Doc. No. 12.

## **LEGAL STANDARD**

Title 28 of the United States Code, section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A district court considering a § 1404(a) motion must "decide on whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine const. Co., Inc., v. U.S. Dist. Court for W. Dist. of Tex.,* 134. S. Ct. 568, 581 (2013) (internal quotations omitted). The burden is on the moving party to show that transfer is appropriate. *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979).

However, "[t]he presence of a forum selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29 (1998). A valid forum selection clause is "enforced through a motion to transfer

1 under § 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court For W. Dist of Tex.,* 571 U.S. 49, 59 (2013). Where a valid forum selection clause preselects an alternative forum than the one selected by the plaintiff, the § 1404(a) analysis alters in three ways: (1) the plaintiff's choice of forum "merits no weight," and the burden shifts to the plaintiff to show why the action should not be transferred to the preselected forum; (2) the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum"; and (3) a § 1404(a) transfer of venue "will not carry with it the original venue's choice-of-law rules." *Id.* at 582. A court may consider public interest factors, but such factors will rarely defeat a motion to transfer in face of a valid, applicable forum selection clause. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018).

## DISCUSSION

### A. UCC 2-207 Does Not Render the Terms and <u>Conditions</u> Invalid

CSI alleges the Terms and Conditions provided by CoreFx are invalid pursuant to the Uniform Commercial Code (UCC) 2-207. Doc. No. 15 at 12. UCC 2-207 "governs contracts between merchants who have exchanged conflicting forms." *Shany Co. v. Crain Walnut Shelling, Inc.,* 2012 WL 1979244, at *5 (E.D. Cal. June 1, 2012). Section 2-207(1) "converts a common law counteroffer into an acceptance even though it states additional or different terms." *Idaho Power Co. v. Westinghouse Elec. Corp.,* 596 F.2d 924, 926 (9th Cir. 1979); *see* U.C.C. § 2-207(1). The additional terms become part of the contract unless the offer is specifically limited to its terms, the offeror objects to the additional terms, or the additional terms materially alter the terms of the offer. *See* U.C.C. § 2-207(2). A contract is materially altered if the additional terms "result in surprise or hardship if incorporated without express awareness by the other party." U.C.C. § 2-207 Official Comment 4 (1995).

Here, CSI's application of UCC 2-207 is misguided as there were no proverbial battle of the forms issues here. CSI did not attempt to object, modify, or offer its own set of terms and conditions. The Terms and Conditions offered CSI an opportunity to object and provided the parameters for proposing alternative terms and conditions. Doc. No. 1

Exh. H. If CSI wished to avoid the Forum Selection Clause, it should have expressly denied the clause rather than accepting the Sales Order, along with the Terms and Conditions, without any dispute. *See Cunico Corp. v. Custom Alloy Corp.* 772 F.App'x 595 (9th Cir. 2019) (holding that "[i]f [plaintiff] wished to avoid an obligation to arbitrate, it should have rejected the arbitration clause when it issued its purchase order."]. Additionally, CSI contends the Terms and Conditions were surreptitiously incorporated in the parties agreement as additional terms and "materially alter" the contract. Doc. No. 15 at 12-13. However, the allegation is meritless. Not only did CoreFX provide CSI with the Terms and Conditions on each Sales Order, but CSI was also provided an email confirmation after each transaction. *See* Doc. Nos. 15-7, 15-8, 15-9 (the email expressly notified CSI that the Terms and Conditions were provided in the email attachment). Therefore, the Terms and Conditions, more specifically the Forum Selection Clause, are incorporated into the parties' agreement.

**B. The Forum Selection Clause is Not Unconscionable**

CSI next contends the Forum Selection Clause is both procedurally and substantively unconscionable because the clause is listed within a contract of adhesion. Doc. No. 15 at 17-18. In California, a contract must be both procedurally and substantively unconscionable to be rendered invalid. *Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916, 922 (9th Cir. 2013); *see also Nagrampa v. MailCoups Inc.,* 469 F.3d 1257, 1281 (9th Cir. 2006) ("even if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale."). The Court will discuss each in turn.

*1. Procedural Unconscionability*

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n. v. Pinnacle Market Development,* 55 Cal. 4th 223, 246 (2012). "Oppression arises from inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," which "[s]urprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a

superior bargaining position." *Serpa v. California Surety Investigations, Inc.,* 215 Cal.App.4th 695, 703 (2013) (citations and quotations omitted).

The Court first focuses on whether the Terms and Conditions are considered a contract of adhesion. A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 99 (2000). Under California law, a contract of adhesion has an element of procedural unconscionability because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa,* 469 F.3d at 1281 (citations omitted).

CoreFX does not dispute that the Terms and Conditions compose a standardized contract, however, that does not inherently create a contract of adhesion. Here, the Terms and Conditions were not provided on a "take it or leave it" basis. Rather, CSI had the opportunity to present any additional or different terms or to object thereto. *See* Doc. No. 1-2 at 18. In fact, the Terms and Conditions specifically mention that they apply "unless" modified in writing. *Id.* CSI has not provided evidence of any attempt to negotiate or alter the Terms and Conditions provided with each of the transactions in dispute. In addition, any potential unequal bargaining power is mitigated by CSI's sophistication as a "premier ingredient company." *See Haisha Corp. v. Sprint Solutions, Inc.,* 2015 WL 224407, at *5 (S.D. Cal. Jan. 15, 2015) (holding that the fact that the parties to the arbitration agreement were "two sophisticated corporate entities" mitigated against a finding of procedural unconscionability). Lastly, CoreFX's automated procedure in providing CSI the Terms and Conditions with each transaction significantly reduces any level of unfairness as CSI had countless opportunities to dispute the contract. *See Molina v. Scandinavian Designs, Inc.,* 2014 WL 1615177, at *7 (N.D. Apr. 21, 2014) (finding that the amount of procedural unconscionability was limited based on the fact that the arbitration agreement was provided as a separate document).

As such, the Court finds the evidence of procedural unconscionability is minimal. However, the Court will address the substantive unconscionability of the arbitration provision, under the sliding scale approach employed by California courts. *See Nargrampa,* 469 F.3d at 1284.

### 2. *Substantive Unconscionability*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Assn v. Pinnacle Mkt. Dev. (US), LLC,* 55 Cal. 4th 223, 246 (2012). "An arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one sided' results." *Nagrampa,* 469 F.3d at 1280 (citations omitted). Contract terms are not substantively unconscionable when they merely give one side a greater benefit; rather, the terms must be "so one-sided as to 'shock the conscience,'…." *Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899, 910-11 (2015) (citations omitted).

CSI argues the Forum Selection Clause is substantively unconscionable by arbitrarily concluding that the provision is one-sided and "no reasonable business person would have accepted." Doc. No. 15 at 18. The Ninth Circuit has held that requiring arbitration "at the location of a defendant's principal place of business" is presumptively enforceable. *Polimaster Ltd. v. RAE Sys.,* 623 F.3d 832, 837 (9th Cir. 2010). Similarly, California law "favors forum selection agreements…so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute…." *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 12 (2001). Here, the Forum Selection Clause, which requires any dispute and claims to take place in Illinois, is alone not unconscionable. CoreFX has its principal place of business in Illinois, and conducts widespread transactions throughout the country. Doc. No. 16 at 10-11. Thus, there is a logical nexus between the Forum Selection Clause and CoreFX's principal place of business. Additionally, the Forum Selection Clause was procured freely and voluntarily, as CSI had an opportunity to provide any additional or different terms or to object to the Forum Selection Clause, but failed to do so. *See* Doc. No. 1-2 at 18.

CSI contends that it maintains its headquarters and principal place of business in California. Doc. No. 15 at 10. CSI also argues the alleged nonconforming goods cause Plaintiff harm in California and is related to contracts executed in California. *Id.* at 11. Although CSI correctly points out the inconvenience of having to litigate the present case in Illinois, that is not a factor indicating the clause is unconscionable. CSI has not argued that they had no reason to expect arbitration would take place in Illinois, or that their right to litigate would be withheld if the Forum Selection Clause were enforced. While CSI's hardship in traveling to Illinois is certainly one circumstance to consider, CoreFX's widespread transactions throughout the country rationally justifies its desire to limit the location for which it potentially could be subject to suit to that of its principal place of business. *See Carnival Cruise Lines v. Shute,* 499 U.S. 585, 593 (1991). As such, the Court finds that CSI has not made a sufficient showing that the Forum Selection Clause is substantively unconscionable. Accordingly, the Forum Selection Clause is not unconscionable.

**C. The Forum Selection Clause Is Otherwise Valid**

A forum selection clause is prima facie valid unless the party challenging the provision can show it is unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972). A forum selection clause may be deemed unreasonable under the following circumstances: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought. CSI does not assert that the Forum Selection Clause would deprive their day in court. Therefore, the Court will not address this exception.

      1. <u>The Forum Selection Clause was not the product of fraud or overreaching</u>

Plaintiff contends the Forum Selection Clauses are a result of fraud and overreaching because the parties originally established a course of dealings without any terms and

conditions, the terms were one-sided, CSI has no opportunity to negotiate the terms of the agreement, and CoreFX failed to advise CSI of the clause. Doc. No. 15 at 20-21.

The Court is not persuaded by CSI's contentions. "For a party to escape a forum-selection clause on the grounds of fraud, it must show that the '*inclusion of that clause in the contract was the product of fraud or coercion*.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1289 (9th Cir. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518 (1974)) (emphasis in original). "Overreaching" is a ground "short of fraud," and a mere showing of "non-negotiability and power difference" does not render a forum selection clause unenforceable. *Mahoney v. Deputy Orthopaedics, Inc.,* 2007 WL 3341389, at *7 (E.D. Cal. Nov. 8, 2007). Plaintiff's arguments fall short of demonstrating that the forum selection clause was a product of either fraud or overreach. As discussed, CoreFX included the Terms and Conditions on each of the purchases CSI made.[1] The Forum Selection Clause was included with each transaction. CSI's argument that the terms were one-sided and CSI had no opportunity to negotiate the terms of the agreement does not excuse compliance with it, "absent some form of fraudulent inducement by the party seeking to enforce the clause." *See Blanco v. Royal Caribbean Cruises, Ltd.,* 1996 WL 479529, at *1 (N.D. Cal. Aug. 15, 1996) (citing cases). Indeed, CSI has been unable to provide the Court with evidence of a dispute as to the Forum Selection Clause on any of the disputed transactions. Furthermore, CoreFX's failure to advise CSI of the existence of the Forum Selection Clause or explain its meaning does not amount to fraudulent inducement. *See Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1141 (9th Cir. 2004) (citations omitted) (finding that "education on a non-negotiated contract will not vitiate a forum selection clause"). For these reasons, the Court finds the Forum Selection Clause was not a product of fraud or overreach.

### 2. Enforcing the Clause Would Not Violate California's Public Policy

---

[1] Although CoreFX failed to include the Terms and Conditions on one of the contested transaction, the course of dealings between the parties indicates a mistake was made as every other Sales Order included a separate Terms and Conditions.

Plaintiff argues that enforcement of both the Forum Selection Clause and the choice of law provision in the Terms and Conditions would contravene California's public policy by improperly waiving remedies provided by California's UCL and FAL. Doc. No. 15 at 19-20.

A forum selection clause is invalid "if enforcement would contravene a strong public policy of the forum in which suit is brought." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972). Enforcement of a forum selection clause "contravene[s] a strong public policy" of a forum state, requiring invalidation of the clause, where enforcement would result in the waiver of an unwaivable right. *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1084 (9th Cir. 2009). Courts "may consider whether choice-of-forum and choice-of-law clauses operate in tandem as prospective waiver of a party's right to purse [its] remedies when deciding whether a forum selection clause is unenforceable as against the strong public policy of that state," but only when "a state prohibits the prospective waiver of the remedies." *Miller v. Hearst Commc'ns, Inc.,* 2012 WL 3205241, at *2 (C.D. Cal. Aug. 3, 2012) (citations omitted). In *Doe 1*, the Ninth Circuit held that enforcement of AOL's forum selection clause would place the case in Virginia state court, where plaintiff would be unable to invoke protections under their Consumer Legal Remedies Act (CLRA) claim. 552 F.3d at 1084. The CLRA contains an anti-waiver provision that states "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." *Id.* (quoting Cal. Civ. Code § 1751). Here, CSI has been unsuccessful in providing a legal basis for treating its UCL and FAL claim as an unwaivable right. Even if there is no Illinois equivalent to the UCL and FAL, there is no anti-waiver clause in the UCL or FAL, as is contained in the CLRA, that could be violated by enforcing the Forum Selection Clause. The fact that remedies available in Illinois may be less favorable than those available in California is not a valid basis to deny enforcement of a Forum Selection Clause. *See Besag v. Custom Decorators, Inc.,* 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009) ("[S]imply because Oregon ostensibly provides less favorable

remedies compared with California is not sufficient in and of itself to invalidate the forum selection clause.").

Furthermore, CSI "fails to challenge the parties' Forum Selection Clause explicitly, and instead improperly speculates as to how the transferee forum would ultimately resolve the issue of what substantive law should be applied to" CSI's claims. *Besag,* 2009 WL 330934, at *4. "A forum selection clause determines where the case will be heard, it is separate and distinct from choice of law provisions that are not before the court." *Id.* at *3. Having determined that the Forum Selection Clause should be considered separately, the Court must analyze whether the Forum Selection Clause, standing alone, violates California's public policy. CSI has not demonstrated that the public policy underlying California's UCL and FAL remedies relate to venue. *See Besag,* 2009 WL 330934, at *4 ("In order for Besag to prevail on her claim that enforcement of the Forum Selection Clause would contravene California's public policy, she must demonstrate that the public policy underlying the Labor Code relates to venue."). In addition, despite the choice of law clause in the Terms and Conditions, the decision as to which state's laws apply to CSI's claims is for the Illinois court to make. *See Beatie and Osborn LLP v. Patriot Scientific Corp.,* 431 F. Supp. 2d 367, 381-82 (S.D. N.Y. 2006) (analyzing California's public policy interest in the case despite the choice of law provision stating that matters "shall be governed by the laws of the State of New York"). As such, the Court finds that enforcement of the Forum Selection Clause does not contravene California's strong public policy.

///
///
///
///
///
///
///
///

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** CoreFX's motion to transfer to the United States District Court for the Northern District of Illinois and **DENIES AS MOOT** CoreFX's motion to dismiss. The Clerk shall **TRANSFER** this matter forthwith and close this Court's files.

**IT IS SO ORDERED.**

DATED: July 6, 2020

_____
Hon. John A. Houston
United States District Judge